1   David Boies*
    dboies@bsfllp.com
2   BOIES SCHILLER FLEXNER LLP
    333 Main Street
3   Armonk, NY 10504
4   Tel.: (914) 749-8200 / Fax: (914) 749-8300

5   Philip C. Korologos*
    pkorologos@bsfllp.com
6   BOIES SCHILLER FLEXNER LLP
    55 Hudson Yards, 20th Floor
7   New York, New York 10001
8   Tel.: (212) 446-2300 / Fax: (212) 446-2350

9   Sophia M. Rios (305801)
    srios@bm.net
10  BERGER MONTAGUE PC
11  12544 High Bluff Drive, Suite 340
    San Diego, CA 92130
12  Tel: (619) 489-0300 / Fax: (215) 875-4604

13  Eric L. Cramer*
    ecramer@bm.net
14  Michael C. Dell'Angelo*
    mdellangelo@bm.net
15  Caitlin G. Coslett*
    ccoslett@bm.net
16  Patrick F. Madden*
    pmadden@bm.net
17  Michaela Wallin*
    mwallin@bm.net
18
19  BERGER MONTAGUE PC
    1818 Market Street, Suite 3600
20  Philadelphia, PA 19103
    Tel: (215) 875-3000 / Fax: (215) 875-4604
21
22  George A. Zelcs*
    gzelcs@koreintillery.com
23  Robert E. Litan*
    rlitan@koreintillery.com
24  KOREIN TILLERY LLC
    205 North Michigan Ave., Suite 1950
25  Chicago, Illinois 60601
26  Tel.: (312) 641-9760 / Fax: (312) 641-9751

27

28

Carol L. O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY LLC
505 North Seventh St., Suite 3600
St. Louis, Missouri 63101-1625
Tel.: (314) 241-4844 / Fax: (314) 241-3525

Robert J. Gralewski, Jr. (196410)
bgralewski@kmllp.com
Samantha L. Greenberg (327224)
sgreenberg@kmllp.com
KIRBY McINERNEY LLP
600 B Street, Suite 2110
San Diego, CA 92101
Tel.: (619) 784-1442

Dennis Stewart (99152)
dstewart@gustafsongluek.com
GUSTAFSON GLUEK PLLC
600 B Street
17th Floor
San Diego, CA 92101
Tel.: (619) 595-3299

Daniel E. Gustafson*
dgustafson@gustafsongluek.com
Daniel C. Hedlund
dhedlund@gustafsongluek.com
Daniel J. Nordin
dnordin@gustafsongluek.com
lwang@gustafsongluek.com
Ling S. Wang
lwang@gustafsongluek.com
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel.: (612) 333-8844

* *Pro Hac Vice* (*See* Dkt. 50)

Counsel for Publisher Plaintiffs

[Additional Counsel identified on signature
pages]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| In re GOOGLE DIGITAL PUBLISHER ANTITRUST LITIGATION | No. 5:20-cv-08984-BLF<br><br>**PUBLISHER PLAINTIFFS' OPPOSITION TO APPLICATION OF GIRARD SHARP LLP FOR APPOINTMENT AS INTERIM LEAD COUNSEL (*DIGITAL ADVERTISING*, DKT. 102)**<br><br>[Hearing information for Publisher Plaintiffs' Motion for Appointment of Interim Co-Lead Class Counsel (*Digital Advertising*, Dkt. 101)]<br>Date:          April 1, 2021<br>Time:          9:00 a.m.<br>Courtroom:   3, 5th Floor, San Jose<br>Judge:         Hon. Beth Labson Freeman |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

PROCEDURAL BACKGROUND ................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.     Girard Sharp Cannot Serve As Interim Lead Counsel for Both the Publisher and Advertiser Classes. ............................................................................................................ 3

      A.     Publishers and Advertisers Have Inherently Conflicting Positions Regarding Anticompetitive Harm. ................................................................................. 4

      B.     The Sharp Application Ignores Well-Established Case Law Requiring Separate Representation. .............................................................................. 6

II.    *Digital Advertising* Counsel Have Not Advanced Publisher Claims in This Litigation. ......... 9

III.   A Plaintiffs' Discovery Committee is Appropriate for Coordinating Discovery Efforts and Will Address Any Concerns About Duplicative Efforts. ...................................... 11

CONCLUSION ............................................................................................................. 11

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Baas v. Dollar Tree Stores, Inc.*,

4
    2008 WL 906496 (N.D. Cal. Apr. 1, 2008) ................................................................. 3

5

*California v. ARC Am. Corp.*,
    490 U.S. 93 (1989) ........................................................................................................ 7

6

*Cameron v. Apple, Inc.*,

7
    No. 3:19-cv-3074 (N.D. Cal. Oct. 10, 2019) ............................................................... 8

8

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ...................................................................................................... 7

9

10

*In re Apple iPhone Antitrust Litig.*,
    No. 11-cv-6714 (N.D. Cal. Apr. 9, 2012) .................................................................... 8

11

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,

12
    795 F.3d 380 (3d Cir. 2015) ......................................................................................... 8

13

*In re Google Play Consumer Antitrust Litig.*,
    No. 3:20-cv-5761 (N.D. Cal. Dec. 16, 2020) ............................................................. 7

14

*In re Google Play Developer Antitrust Litig.*,

15
    No. 3:20-cv-5792 (N.D. Cal. Dec. 11, 2020) ............................................................. 7

16

*In re Pressure Sensitive Labelstock Antitrust Litig.*,

17
    No. 3:03-md-1556, 2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) ............................ 11

18

*In re Treasury Sec. Auction Antitrust Litig.*,

19
    No. 15-md-2673-PGG, 2017 WL 10991411 (S.D.N.Y. Aug. 23, 2017) ................. 8, 9

20

*Kayes v. Pac. Lumber Co.*,
    51 F.3d 1449 (9th Cir. 1995) ....................................................................................... 3

21

*Neilson v. Union Bank of California, N.A.*,

22
    No. 02-cv-06942-MMM, 2003 WL 27374138 (C.D. Cal. Aug. 12, 2013) ................. 3

23

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) .................................................................................................. 3, 8

24

25

*Sullivan v. Chase Inv. Servs. of Boston, Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978) ................................................................................... 3

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 4, 11

**Acts**

Commodity Exchange Act ............................................................................................. 8, 9

Sherman Act ................................................................................................................... 8, 9

**Other Authorities**

Manual for Complex Litigation (4th ed.) § 10.221 .......................................................... 3

Manual for Complex Litigation (4th ed.) § 21.12 ............................................................ 4

Moore's Federal Practice § 23.25(5)(e) (3d ed. 1998) ..................................................... 3

1

## INTRODUCTION

2      The law is clear that when distinct plaintiff groups have conflicting positions, courts

3 should appoint separate lead counsel from the outset. Here, both publishers and advertisers, like all

4 sellers and buyers, have interests that are fundamentally adverse. While both groups want to pay

5 less to Google, publishers want advertisers to pay more for their ad spaces, and advertisers want to

6 pay less to publishers for that ad space. That conflict will play out in every stage of this case as

7 each group seeks a larger share—at the expense of the other—of the total artificial inflation of the

8 "take rate" Google, as the middleman, extracts from each ad sale by virtue of its anti-competitive

9 conduct. But Google's total take rate is only a part of the focus of each group. Rather, publishers

10 and advertisers participate in different markets and allege separate, only partially overlapping,

11 anti-competitive conduct that each asserts has harmed both classes, but in different and

12 fundamentally contradictory ways. Accordingly, each group must have entirely separate

13 representation to pursue its interests vigorously.

14

## PROCEDURAL BACKGROUND

15      On February 9, the Court instructed "[t]he publisher plaintiffs—namely, the *Sweepstakes*,

16 *Genius Media*, *Sterling*, and *Astarita* plaintiffs, to "file applications for appointment of a

17 leadership committee and lead interim counsel." *In re Google Digital Advertising Antitrust Litig.*,

18 No. 5:20-cv-03556-BLF (N.D. Cal.) ("*Digital Advertising*"), Dkt. 89 at 1.On February 25, the

19 *Sweepstakes*, *Genius Media*, and *Sterling* plaintiffs—along with the plaintiffs in related cases

20 *JLaSalle Enterprises LLC v. Google LLC*, No. 5:21-cv-00748-BLF, and *Mikula Web Solutions,*

21 *Inc. v. Google LLC*, No. 5:21-cv-00810-BLF—filed a joint motion to appoint the law firms of

22 Boies Schiller Flexner LLP, Korein Tillery LLC, and Berger Montague PC ("Proposed Interim

23 Co-Lead Publisher Class Counsel") as interim co-lead counsel for the proposed publisher class,

24 and the law firms of Kirby McInerney LLP and Gustafson Gluek PLLC to serve along with

25 Proposed Interim Co-Lead Publisher Class Counsel as members of the Publisher Class Leadership

26 Committee. *Digital Advertising*, Dkt. 101.

27      Even though the Court's February 9 order refers to only interim leadership applications for

28 the proposed Publisher Class, Girard Sharp LLP ("Girard Sharp") submitted an application asking

---

PUBLISHER PLFS OPP TO GIRARD          1          Case No.: 5:20-cv-08984-BLF
SHARP'S APP FOR APPT OF INTERIM
LEAD COUNSEL

the Court "to appoint the firm (1) as interim lead counsel for the advertiser plaintiffs, supported by a steering committee of advertiser counsel John Radice of the Radice Law Firm, PC and Archana Tamoshunas of Taus, Cebulash & Landau, LLP, and (2) as a member of the interim leadership team for the publisher plaintiffs, with the firm playing a coordinating function across the claims." *Digital Advertising*, Dkt. 102 ("Sharp Application").[1] Girard Sharp represents two advertiser plaintiffs (Hanson Law Firm, PC and Surefreight Global LLC d/b/a Prana Pets) in *Digital Advertising*, and the publisher plaintiff, Mark Astarita, in *Astarita* (Sharp Application at 1), which was filed three weeks after the *Sweepstakes* and *Genius Media* complaints.[2] Advertiser plaintiff Vitor Lindo also filed a motion seeking the appointment of his counsel, Tina Wolfson and Rachel Johnson of Ahdoot & Wolfson, PC, as interim lead counsel for the proposed advertiser class. *Digital Advertising,* Dkt. 103 ("Ahdoot Wolfson Application").

The publisher plaintiffs in *Sweepstakes*, *Genius Media*, *Sterling*, *JLaSalle*, and *Mikula Web* (collectively, the "Publisher Plaintiffs")—which comprise seven of the eight named publisher plaintiffs in this litigation—take no position on the Sharp Application's first request regarding the composition of any interim leadership structure for the proposed advertiser class. Publisher Plaintiffs do, however, oppose the Sharp Application's request that the Court appoint Girard Sharp "as a member of the interim leadership team for the publisher plaintiffs, with the firm playing a coordinating function across the claims." As explained in the Publisher Plaintiffs' Application, class counsel owe their proposed class members a duty of loyalty, and insurmountable conflicts exist between the proposed publisher and advertiser classes that prevent Girard Sharp from simultaneously serving in a leadership role for both. *See* § I.A., *infra*.  The Adhoot Wolfson Application concurs, citing "the potential tensions highlighted by counsel for the publisher class." Adhoot Wolfson Application at 1. Following "consultation with a complex litigation ethics scholar," Adhoot Wolfson concludes that "it is in the best interest of the advertiser class to be represented by counsel with a duty of loyalty to this class only in the top tier of leadership." *Id.*

---

[1] Notably, the Sharp Application was filed on only the *Digital Advertising* docket, and does not include the captions of the publisher cases, even though Girard Sharp seeks to represent the publisher class.

[2] It bears repeating that no publisher plaintiff has brought claims in the *Digital Advertising* case.

The conflicts between the proposed publisher and advertiser classes, along with sound case management practices, require entirely separate interim lead counsel for the two classes, with a discovery coordination committee comprised of counsel from both classes.

## ARGUMENT

**I.**     **Girard Sharp Cannot Serve As Interim Lead Counsel for Both the Publisher and Advertiser Classes.**

The "most important" factor when determining interim lead counsel is "achieving efficiency and economy without jeopardizing fairness to the parties." Manual for Complex Litigation (4th ed.) § 10.221. Here, fairness requires that the proposed publisher class and the proposed advertiser class each have independent interim lead counsel to make decisions based on the unique interests of their respective class clients and to insulate the ultimate results achieved from any claim of divided loyalties. As the Supreme Court has made clear, "An attorney who represents another class against the same defendant may not serve as class counsel." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (citing *Moore's Federal Practice* § 23.25(5)(e), p. 23–149 (3d ed. 1998)).

Indeed, in part because absent class members are not before the court, class counsel owe a special duty of loyalty to the classes they seek to represent. Many courts have held class counsel *to an even higher standard* than in the non-class context, barring class counsel from engaging in representation outside the class action that could present even the *appearance* of a conflict of interest. *See Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." (quoting *Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978)); *Baas v. Dollar Tree Stores, Inc.*, 2008 WL 906496, at *2 (N.D. Cal. Apr. 1, 2008) (same). This duty of loyalty attaches prior to the class certification stage to protect proposed class members at all stages of the case. *Neilson v. Union Bank of California, N.A.*, No. 02-cv-06942-MMM, 2003 WL 27374138, at * 6 (C.D. Cal. Aug. 12, 2013) ("prohibition against representing conflicting interests simultaneously extends to the representation of putative class members"); *see also* Manual for Complex Litigation, 4th ed. §

1  21.12 ("Rule 23 and the case law make clear that, even before certification or a formal attorney–

2  client relationship, an attorney acting on behalf of a putative class must act in the best interests of

3  the class as a whole").

4         Although publishers and advertisers challenge similar anticompetitive conduct by Google,

5  the two classes are distinctly situated for purposes of injury and damages, and the damages they

6  seek in their respective complaints overlap, placing the two groups in direct conflict with each

7  other. Moreover, the Publisher Plaintiffs' complaints focus on anticompetitive conduct and harm

8  largely stemming from Google's publisher Ad Server—*which advertisers do not use*. In light of

9  these conflicts, Girard Sharp cannot simultaneously have an undivided loyalty to each class. *See*

10  Adhoot Wolfson Application at 1. The Sharp Application dismisses these conflicts as

11  "hypothetical" and cautions against "manufacturing potential conflicts," Sharp Application at 6,

12  but they have already manifested themselves on the face of the pleadings. The publisher class is

13  entitled to counsel that fully recognize and embrace their obligations to publisher class members at

14  every step.

15         **A.     Publishers and Advertisers Have Inherently Conflicting Positions**

16                   **Regarding Anticompetitive Harm.**

17         The Publisher Plaintiff and *Digital Advertising* complaints do not allege uniform conduct

18  that harmed both advertisers and publishers, but a variety of types of behavior, some of which are

19  and were aimed at and predominantly affected publishers, and some of which are and were aimed

20  at and predominantly affected  advertisers. For example, the Publisher Plaintiffs' complaints focus

21  predominantly on the publisher Ad Server market and conduct directed at publishers through that

22  market, such as Google's header bidding manipulations, *see, e.g.*, *Genius Media* Compl. ¶¶ 53–56;

23  *Sterling* Compl. ¶¶ 103–15; *JLaSalle* Compl. ¶¶ 84–94; *Sweepstakes* Compl. ¶¶ 107–10; *Mikula*

24  Compl. ¶¶ 84–94, and its tying or bundling of its publisher Ad Server with advertising-placement

25  services, *e.g.*, *Genius Media* Compl. ¶¶ 60–64; *Sterling* Compl. ¶ 145; *JLaSalle* Compl. ¶¶ 60–61;

26  *Sweepstakes* Compl. ¶¶ 137–40; *Mikula* Compl. ¶¶ 60–61, which are directed at publishers and

27  uniquely harm publishers. Not surprisingly, because advertisers do not use Google's publisher Ad

28  Server, allegations concerning that product are missing from the amended complaint in *Digital*

*Advertising*, which emphasizes Google's anticompetitive conduct with respect to search and data suppression and manipulation. Contrary to the Sharp Application's assertion, these differences do not merely go toward a "hypothetical pot of damages," Sharp Application at 6, but implicate each class's unique theory of anticompetitive conduct and injury.

These important differences do not relate solely to "damage theories one group or the other *may* eventually posit." Sharp Application at 6 (emphasis added). The multiple conflicts exist now, on the face of the pleadings, and will continue to manifest as the case proceeds. For example, the Publisher Plaintiffs allege that Google's conduct may have actually "*benefitted* advertisers." *Genius Media* Compl. ¶ 105 (emphasis added). Specifically, the Publisher Plaintiffs claim Google's use of a first-in-line privilege and a last-look option *suppressed* bids by advertisers on publisher inventory. *Id.* ¶ 50. In other words, some advertisers paid less for the same impressions than they would have in the but-for world without Google's anti-competitive conduct, resulting in lower revenues for publishers. Similarly, the proposed publisher class contends that Google's efforts to disadvantage rivals in the Ad Exchange and Ad Network markets drive more share to Google's Ad Exchange and Ad Network and thus more impressions to the advertisers who used Google's advertising services to place ads on websites—*i.e.*, the plaintiff advertiser class, *see, e.g.*, *Sterling* Compl. ¶¶ 83–84—at the expense of advertisers who do not use Google's ad tech services. *See, e.g.*, *Genius Media* Compl. ¶¶ 49–52; *JLaSalle* Compl. ¶¶ 76–77. At bottom, each class's interests cannot be "entirely aligned in maximizing the amount of total damages," Sharp Application at 6, if one class contends that some members of the other may have benefitted from Google's conduct.

Moreover, even if the conflicts between the classes were limited to a "pot of damages" (which, for reasons described above and in the Publisher Plaintiffs' Application, they are not), those conflicts would still require separate representation between the two classes because they are not, as the Sharp Application contends, "hypothetical." Sharp Application at 6. In connection with each sale of publishers' digital display ad space, Google takes a percentage of advertisers' payments for itself—what is referred to as the "take rate." *See, e.g.*, *Digital Advertising* Am. Compl. ¶ 43. Publishers claim that some portion of the take rate is an overcharge that Google

imposes on publishers due to the anticompetitive conduct challenged in the Publisher Plaintiffs' complaints; advertisers claim that some portion of that same take rate is an overcharge that Google imposes on advertisers. *Compare Sterling* Compl. ¶ 14 *with Digital Advertising* Am. Compl. ¶¶ 13, 18, 23. Although both publishers and advertisers will seek to show that Google's take rate was higher than it would have been absent the challenged conduct, each group will hotly contest how that overpayment should be allocated as between the publisher and advertiser classes. Indeed, the advertiser complaint alleges that advertisers "largely" bear the overcharge. *See Digital Advertising* Am. Compl. ¶ 125 (price increases for display advertising inventory "resulted in substantial part from Google's consolidation of the intermediation services market and Google's price increases for those services, and *were largely borne by advertisers* who paid Google for those services to broker the placement of their display ads" (emphasis added)). The Publisher Plaintiffs disagree. *See, e.g.*, *Genius Media* Compl. ¶ 91 (the "harm to competition" is felt "*particularly by publishers* but also by advertisers" (emphasis added)). Thus, decisions regarding publishers' litigation strategy should not be influenced (or infiltrated) by counsel who has already expressed a position adverse to the publisher class.[3] These contradictory allegations are fundamental, non-speculative, have already been articulated in the pleadings, and are likely only to magnify as the case proceeds to class certification where the conflicting impact and damages theories of each group will take center stage.

### B.    The Sharp Application Ignores Well-Established Case Law Requiring Separate Representation.

The Publisher Plaintiffs' Application details how courts, including those in the Ninth Circuit, have routinely appointed separate lead counsel in similar situations. The Sharp

---

[3] This is not merely academic. Publisher Plaintiffs would not want advertiser counsel to be present when they are working with their experts on core theories of impact and damages, and in particular, on analyses that explore the relative overcharge incurred by the publishers versus the advertisers. Advertiser counsel would be obliged, out of a duty to loyalty to their advertiser clients, to share their knowledge of the publishers' damages theories even where, indeed especially where, the publishers' and advertisers' approaches are in conflict. This type of dilemma would play out in countless ways as this case moves through fact and expert discovery, class certification, and trial.

1   Application attempts, unsuccessfully, to distinguish those types of cases from this one, arguing

2   that "Google's increasing power on each side of the market enhanced its power on both sides,"

3   and that "market reality . . . distinguishes the posture here from the direct vs. indirect purchaser

4   situation warranting separate representation in most antitrust cases against price-fixing cartels."

5   Sharp Application at 5. If anything, however, the "market reality" here—with publishers and

6   advertisers on separate sides of the same transactions and thus fighting over the same pool of

7   overcharges—provides a stronger basis for separate representation than in the direct/indirect

8   purchaser context. Direct purchaser claims are brought under federal antitrust law, which permits

9   100% recovery of the overcharge incurred even if some of that overcharge is "passed on" to

10  indirect purchasers. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–46 (1977). At the same time,

11  indirect purchasers can recover for the entire amount of the overcharge that the direct purchasers

12  pass on to them under multiple state antitrust statutes. *Id.* The law, however, eliminates this

13  potential conflict because it allows "double recovery" of the same overcharge. *California v. ARC*

14  *Am. Corp.*, 490 U.S. 93, 96–97 (1989). In contrast, in this case, both publishers and advertisers

15  will be fighting over their respective shares of the exact same overcharge, and Google will

16  certainly argue that double recovery is not allowed.

17          The situation here is analogous to those in the actions in this District against each of

18  Google and Apple relating to their app store transactions. In those cases, developers and

19  consumers likewise have a seller-buyer dynamic, and both seek to recover for Google's and

20  Apple's purported supra-competitive take rate. Consistent with that recognition, this District's

21  courts have appointed separate interim leadership for each of developers (who sell products on the

22  app stores) and consumers (who buy products on the app stores). *E.g., In re Google Play*

23  *Developer Antitrust Litig.*, No. 3:20-cv-5792, Dkt. 79 (N.D. Cal. Dec. 11, 2020) (appointing three

24  firms as co-lead counsel for developers in a Section 2 case seeking to recover a portion of a 30%

25  transaction fee charged for app store and in-app purchases); *In re Google Play Consumer Antitrust*

26  *Litig.*, No. 3:20-cv-5761, Dkt. 128 (N.D. Cal. Dec. 16, 2020) (appointing two firms as co-lead

27  counsel, a liaison counsel, and three additional firms to a steering committee to represent

28  consumers seeking to recover a portion of the same 30% transaction fee charged for app store and

in-app purchases); *In re Apple iPhone Antitrust Litig.*, No. 11-cv-6714, Dkt. 34 (N.D. Cal. Apr. 9, 2012) (appointing interim lead counsel for consumers in a Section 2 case seeking to recover a portion of the 30% transaction fee Apple charges on in-app and app store purchases as an overcharge); *Cameron v. Apple, Inc.*, No. 3:19-cv-3074, Dkt. 65 (N.D. Cal. Oct. 10, 2019) (appointing interim lead counsel to represent developers seeking to recover a portion of the same 30% transaction fee Apple charges on in-app and app store purchases as an overcharge). In this case, conflicts arise because advertisers are buyers of publisher ad space, and publishers are sellers of that space. Just like developers and consumers in an app store, or merchant and customer in a bazaar, there are competitive circumstances where a "better" outcome for the advertiser can be a "worse" outcome for the publisher.

The Sharp Application also asserts that "this case does not present a past vs. future harm conflict as in cases like *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)." Sharp Application at 5. The Sharp Application cannot, and does not, explain how that distinction undercuts the central principle of *Ortiz*: "Class counsel may not consistent with *Ortiz* represent an entire class if subgroups within the class have interests that are significantly antagonistic to one another." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393–94 (3d Cir. 2015). Indeed, publisher allegations that they receive too little for ad space inventory and pay the lion's share of Google's allegedly inflated take rate, contrasted with advertiser allegations that they pay too much for ads and *also pay* the lion's share of Google's allegedly inflated take rate, are present antagonisms that have already manifested themselves and are certain to be exacerbated as the case proceeds.

The Sharp Application also cites *In re Treasury Sec. Auction Antitrust Litig.*, No. 15-md-2673-PGG, 2017 WL 10991411, at *3 (S.D.N.Y. Aug. 23, 2017), but there the "futures-only" plaintiffs (which referred *not* to present versus future claimants, but to the *product* that group purchased—commodities futures contracts) alleged nothing about a conflict between groups with current and future damages, but instead argued that "claims brought under the Sherman Act and the Commodity Exchange Act contain separate elements." *Id.* at *3. The "futures-only" plaintiffs conceded that their claims amounted to "a subclass . . . within a broader class" alleging the same

1    conduct giving rise to the same harm, but argued that because the "futures-only" plaintiffs

2    purchased Treasury Futures contracts, they could also bring claims under the Commodity

3    Exchange Act, and thus required separate representation. *See In re Treasury Sec. Auction Antitrust

4    Litig.*, No. 15-md-2673-PGG, Dkt. 82 at *3–4 (S.D.N.Y. Sept. 2, 2016) (Futures-Only Plaintiffs'

5    Application for Interim Lead Counsel). In denying that request, the court reasoned: "That claims

6    brought under the Sherman Act and the Commodity Exchange Act contain separate elements does

7    not mean that a conflict between class members exists." *Treasury Sec. Auction Antitrust Litig.*,

8    2017 WL 10991411, at *3. Significantly, while they may require distinct elements of proof,

9    Sherman Act and Commodity Exchange Act claims are still based on the same underlying factual

10   allegations that are not in conflict. That is not the case here—Publisher Plaintiffs seek counsel

11   separate from the advertiser class not because they have alleged a separate claim with a unique

12   element, but because actual *factual* conflicts exist on the face of the pleadings—conflicts that are

13   likely to be a focal point as the case proceeds through discovery to class certification, expert

14   reports, and trial.

15       II.     ***Digital Advertising* Counsel Have Not Advanced Publisher Claims in This**

16               **Litigation.**

17       The Sharp Application asserts that "Girard Sharp sued Google on behalf of publishers

18   before the DOJ or state attorneys general filed enforcement actions and half a year before any

19   other publisher plaintiff brought monopoly claims." Sharp Application at 7. It ignores that,

20   although Girard Sharp may have *purported* to bring suit on behalf of a class of advertisers and

21   publishers in *Digital Advertising*, it failed to name a publisher plaintiff throughout that same half

22   year. The *Astarita* lawsuit was not filed until three weeks after *Sweepstakes* and *Genius Media*

23   were filed, and it nevertheless largely parrots the advertiser-centric allegations of the *Digital*

24   *Advertising* complaint.

25       In light of that history, there is no credible claim that counsel for the advertiser class

26   spearheaded the investigation of allegations unique to the proposed publisher class. The Publisher

27   Plaintiffs' complaints turn on Google's abuse of its publisher Ad Server, including how Google

28   uses its publisher Ad Server and Ad Exchange/Ad Network in conjunction to harm competition.

*See Genius Media* Compl. ¶¶ 2–14, 34–95; *Sterling* Compl. ¶¶ 33–40, 66–144. The advertiser plaintiffs in *Digital Advertising* do *not* use publisher Ad Servers, and thus allegations and claims concerning Google's abuse of its publisher Ad Server—the product fundamentally at issue in Publisher Plaintiffs' cases—are missing from that complaint. *See generally Digital Advertising* Am. Compl.

Moreover, no counsel applying for lead counsel status in this matter can lay claim to being the mastermind behind identifying and investigating Google's anticompetitive conduct or its status as a monopolist. These lawsuits come on the heels of years of regulatory investigations in the United States and around the world. The academic literature is replete with articles detailing Google's abuses and potential causes of action, including "A Roadmap for Digital Advertising Monopolization Case Against Google" ("Roadmap"), written by Fiona Scott Morton, a well-known antitrust economist and former top economist in the Department of Justice's Antitrust Division, and David Dinielli, former special counsel in the Department of Justice's Antitrust Division. The Roadmap identified 20 different ways in which Google may have violated the antitrust laws in the digital advertising market. Largely adapting this "Roadmap," Grand Atlas Tours, represented by Girard Sharp, filed its case on May 27, 2020—about 10 days *after* the Roadmap was released. *See Digital Advertising*, Dkt. 1. The Roadmap followed years of investigations across the globe into Google's conduct, which had been highly publicized and described in foreign enforcement actions.

Nor is it correct that "Girard Sharp has led the litigation since instituting it." Sharp Application at 7. Prior to the relation of the *Sweepstakes*, *Genius Media*, and *Sterling* cases, there were no publisher-centric claims or theories of anticompetitive conduct and harm in *Digital Advertising*. And for good reason: the amended complaint in *Digital Advertising* had *no* publisher plaintiff and, in fact, alleged that most of the anticompetitive harm was "largely borne by advertisers." *Digital Advertising* Am. Compl. ¶ 125. In other words, there was no publisher-centric litigation to lead before mid-December 2020 when the *Sweepstakes* and *Genius Media* complaints were filed.

1

2

### III.   A Plaintiffs' Discovery Committee is Appropriate for Coordinating Discovery Efforts and Will Address Any Concerns About Duplicative Efforts.

3   As described above, there are significant conflicts between the proposed publisher class

4   and the proposed advertiser class that require the appointment of separate lead counsel. That does

5   not mean, however, that the two groups cannot work together when appropriate. At the recent

6   conference, the Court indicated that it would like to have a committee consisting of counsel for

7   both publishers and advertisers to coordinate discovery on behalf of these different types of

8   plaintiffs. *Digital Advertising*, Dkt. 84, Feb. 4, 2020 Hr'g Tr. 28:23–29:1. Proposed Interim Co-

9   Lead Publisher Class Counsel commits to working with counsel for the advertiser class to

10   coordinate discovery efforts between the two classes, which will promote efficiency and reduce

11   the risk of duplicative litigation. The Sharp Application's reliance on *In re Pressure Sensitive*

12   *Labelstock Antitrust Litig.*, No. 3:03-md-1556, 2007 WL 4150666, at *23 (M.D. Pa. Nov. 19,

13   2007), as an example of coordinated discovery by interim lead counsel, Sharp Application at 5, is

14   misplaced. In that case, the court appointed four firms as Interim Co-Lead Counsel and a fifth firm

15   as Liaison Counsel for the Plaintiff Class, but, unlike here, neither group had identified any

16   conflict between different plaintiff groups. *Labelstock*, 2007 WL 4150666, at *22–23.

17   To be clear, although there are issues on which both of the proposed classes will want to

18   conduct overlapping discovery, there already are divergent areas of inquiry that underlie the

19   claims of each distinct class. For example, Google's abuse of its publisher Ad Server—a product

20   that even Google concedes the advertiser plaintiffs do not use, *see Digital Advertising* , Dkt. 57 at

21   3—is central to the Publisher Plaintiffs' complaints. This further weighs in favor of appointing

22   separate lead counsel to pursue discovery unique to one group while also appointing a discovery

23   committee that can coordinate discovery efforts on those topics that are common to both groups.

### <u>CONCLUSION</u>

25   For the foregoing reasons, Publisher Plaintiffs respectfully request that, pursuant to Rule

26   23(g)(3), this Court deny the Sharp Application as it relates to the leadership structure of the

27   proposed publisher class and appoint Boies Schiller Flexner LLP, Korein Tillery LLC, and Berger

28   Montague PC as interim co-lead counsel for the proposed publisher class, and also Kirby

1    McInerney LLP and Gustafson Gluek PLLC as members of Publisher Plaintiffs' Leadership

2    Committee.

3

4    Dated: March 11, 2021                         Respectfully submitted,

5                                                  BOIES SCHILLER FLEXNER LLP

6
                                                   By: /s/ Philip C. Korologos
7                                                  Philip C. Korologos*
                                                   pkorologos@bsfllp.com
8                                                  Brianna S. Hills*
                                                   bhills@bsfllp.com
9                                                  BOIES SCHILLER FLEXNER LLP
10                                                 55 Hudson Yards, 20th Floor
                                                   New York, NY 10001
11                                                 Tel.: (212) 446-2300 / Fax: (212) 446-2350

12                                                 David Boies*
13                                                 dboies@bsfllp.com
                                                   BOIES SCHILLER FLEXNER LLP
14                                                 333 Main Street
                                                   Armonk, NY 10504
15                                                 Tel.: (914) 749-8200 / Fax: (914) 749-8300

16                                                 Abby L. Dennis*
17                                                 adennis@bsfllp.com
                                                   Jesse Panuccio*
18                                                 jpanuccio@bsfllp.com
                                                   BOIES SCHILLER FLEXNER LLP
19                                                 1401 New York Avenue, NW
                                                   Washington, DC 20005
20                                                 Tel.: (202) 895-7580 / Fax: (202) 237-6131

21                                                 Mark C. Mao (236165)
22                                                 mmao@bsfllp.com
                                                   Sean P. Rodriguez (262437)
23                                                 srodriguez@bsfllp.com
                                                   BOIES SCHILLER FLEXNER LLP
24                                                 44 Montgomery Street, 41st Floor
                                                   San Francisco, CA 94104
25                                                 Tel.: (415) 293-6820 / Fax: (415) 293-6899

26
                                                   Sabria A. McElroy*
27                                                 smcelroy@bsfllp.com
                                                   BOIES SCHILLER FLEXNER LLP
28

PUBLISHER PLFS OPP TO GIRARD              12              Case No.: 5:20-cv-08984-BLF
SHARP'S APP FOR APPT OF INTERIM
LEAD COUNSEL

401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel.: (954) 377 4216 / Fax: (954) 356-0022

George A. Zelcs*
gzelcs@koreintillery.com
Robert E. Litan*
rlitan@koreintillery.com
Randall P. Ewing*
rewing@koreintillery.com
Jonathon D. Byrer*
jbyrer@koreintillery.com
Ryan A. Cortazar*
rcortazar@koreintillery.com
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel.: (312) 641-9750 / Fax: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Michael E. Klenov (277028)
mklenov@koreintillery.com
Carol L. O'Keefe*
cokeefe@koreintillery.com
Jamie Boyer*
jboyer@koreintillery.com
KOREIN TILLERY LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844 / Fax: (314) 241-3525

*Counsel for Genius Media Group, Inc., The Nation Company, L.P., and The Progressive, Inc.*

Dated: March 11, 2021                   BERGER MONTAGUE PC

                                        By: */s/ Michael C. Dell'Angelo*

                                        Eric L. Cramer*
                                        ecramer@bm.net
                                        Michael C. Dell'Angelo*
                                        mdellangelo@bm.net
                                        Caitlin G. Coslett*
                                        ccoslett@bm.net
                                        Patrick F. Madden*
                                        pmadden@bm.net
                                        Michaela Wallin*

mwallin@bm.net
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000 / Fax: (215) 875-4604

Sophia M. Rios (305801)
srios@bm.net
BERGER MONTAGUE PC
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel.: (619) 489-0300 / Fax: (215) 875-4604

Daniel J. Walker*
dwalker@bm.net
BERGER MONTAGUE PC
2001 Pennsylvania Ave., NW
Suite 300
Washington DC 20006
Tel.: (202) 559-9745

Michael K. Yarnoff**
myarnoff@kehoelawfirm.com
KEHOE LAW FIRM, P.C.
Two Penn Center Plaza
1500 JFK Blvd., Suite 1020
Philadelphia, PA 19102
Telephone: (215) 792-6676

*Counsel for Sterling International Consulting
Group*

Dated: March 11, 2021

ROBBINS GELLER RUDMAN
& DOWD LLP

By: */s/ David W. Mitchell*
DAVID W. MITCHELL
davidm@rgrdlaw.com
STEVEN M. JODLOWSKI
sjodlowski@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Tel.: (619) 231-1058 / Fax: (619) 231-7423

PAUL J. GELLER**
STUART A. DAVIDSON*
Robbins Geller Rudman & Dowd LLP
120 East Palmetto Park Road, Suite 500

1

Boca Raton, FL 33432
Tel.: (561) 750-3000 / Fax: (561) 750-3364

2

John C. Herman*

3

(GA Bar No. 348370)
jherman@hermanjones.com

4

Serina M. Vash**
(NJ Bar No. 041142009)

5

svash@hermanjones.com

6

HERMAN JONES LLP
3424 Peachtree Road, N.E., Suite 1650

7

Atlanta, Georgia 30326
Tel.: (404) 504-6500 / Fax: (404) 504-6501

8

9

*Counsel for Plaintiff Sweepstakes Today, LLC*

10

Dated: March 11, 2021

11

KIRBY McINERNEY LLP

12

By: */s/ Robert Gralewski*

Robert J. Gralewski, Jr. (196410)

13

bgralewski@kmllp.com
Samantha L. Greenberg (327224)

14

sgreenberg@kmllp.com

15

KIRBY McINERNEY LLP
600 B Street, Suite 2110

16

San Diego, CA 92101
Telephone: (619) 784-1442

17

Karen Lerner**

18

klerner@kmllp.com
Daniel Hume**

19

dhume@kmllp.com

20

David Bishop**
dbishop@kmllp.com

21

Andrew McNeela**
amcneela@kmllp.com

22

KIRBY McINERNEY LLP
250 Park Avenue, Suite 820

23

New York, New York 10177
Telephone: (212) 371-6600

24

Facsimile: (212) 751-2540

25

HINKLE SHANOR LLP

26

Thomas M. Hnasko
Michael E. Jacobs

27

218 Montezuma Avenue
Sante Fe, NM 87501

28

PUBLISHER PLFS OPP TO GIRARD
SHARP'S APP FOR APPT OF INTERIM
LEAD COUNSEL

15

Case No.: 5:20-cv-08984-BLF

Telephone: (505) 982-4554
thnasko@hinklelawfirm.com
mjacobs@hinklelawfirm.com

WILLIAMS LAW FIRM
Kent Williams
1632 Homestead Trail
Long Lake, MN 55356
Tel.: (612) 940-4452 / Fax: (952) 283-1525
williamslawmn@gmail.com

*Counsel for JLaSalle Enterprises LLC*

Dated: March 11, 2021                    GUSTAFSON GLUEK PLLC

                                         By: */s/ Dennis Stewart*
                                         Dennis Stewart (99152)
                                         dstewart@gustafsongluek.com
                                         GUSTAFSON GLUEK PLLC
                                         600 B Street
                                         17th Floor
                                         San Diego, CA 92101
                                         Telephone: (619) 595-3299

                                         Daniel E. Gustafson*
                                         dgustafson@gustafsongluek.com
                                         Daniel C. Hedlund
                                         dhedlund@gustafsongluek.com
                                         Daniel J. Nordin
                                         dnordin@gustafsongluek.com
                                         Ling S. Wang
                                         lwang@gustafsongluek.com
                                         GUSTAFSON GLUEK PLLC
                                         Canadian Pacific Plaza
                                         120 South Sixth Street, Suite 2600
                                         Minneapolis, MN 55402
                                         Telephone: (612) 333-8844

                                         Marc H. Edelson, Esq.
                                         medelson@edelson-law.com
                                         EDELSON LECHTZIN LLP
                                         3 Terry Drive, Suite 205
                                         Newtown, PA 18940
                                         Tel.: (215) 867-2399 / Fax: (267) 685-0676

                                         Joshua H. Grabar
                                         jgrabar@grabarlaw.com

GRABAR LAW OFFICE
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (267) 507-6085 / Fax: (267) 507-6048

E. Powell Miller
epm@millerlawpc.com
Sharon S. Almonrode*
ssa@millerlawpc.com
Emily E. Hughes
eeh@millerlawpc.com
THE MILLER LAW FIRM, P.C.
950 West University Drive, Suite 300
Rochester, MI 48307
Tel.: (248) 841-2200 / Fax: (248) 652-2852

Simon Bahne Paris, Esquire
sparis@smbb.com
Patrick Howard, Esquire
phoward@smbb.com
SALTZ, MONGELUZZI & BENDESKY, P.C.
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Tel.: (215) 496-8282 / Fax: (215) 496-0999

Kenneth A. Wexler*
kaw@wexlerwallace.com
Kara A. Elgersma*
kae@wexlerwallace.com
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603

Dianne M. Nast
dnast@nastlaw.com
Daniel N. Gallucci
dgallucci@nastlaw.com
Joseph N. Roda
jnroda@nastlaw.com
NASTLAWLLC
1101 Market Street, Suite 2801
Philadelphia, PA 19106

*Counsel for Mikula Web Solutions, Inc.*

*\*Pro Hac Vice (See Dkt. 50)*
*\*\*Pro Hac Vice app. forthcoming*

1

**FILER'S ATTESTATION**

2     Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Philip C. Korologos attest that

3  concurrence in the filing of:

4     **PUBLISHER PLAINTIFFS' OPPOSITION TO APPLICATION OF GIRARD**

5     **SHARP LLP FOR APPOINTMENT AS INTERIM LEAD COUNSEL (*DIGITAL***

6     ***ADVERTISING*, DKT. 102)**

7     has been obtained from each of the other signatories.

8

9

Dated: March 11, 2021                    */s/ Philip C. Korologos*

10                                                Philip C. Korologos

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28