Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Scott M. Grzenczyk (State Bar No. 279309)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
scottg@girardsharp.com

*Attorneys for Plaintiffs Mark J. Astarita, Hanson Law Firm, PC, and Surefreight Global LLC d/b/a Prana Pets*

[Additional counsel on signature block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE GOOGLE DIGITAL PUBLISHER ANTITRUST LITIGATION | Case No. 5:20-cv-08984-BLF<br><br>**REPLY IN SUPPORT OF APPLICATION OF GIRARD SHARP LLP FOR APPOINTMENT AS INTERIM LEAD COUNSEL**<br><br>Date: April 1, 2021<br>Time: 9:00 a.m.<br>Courtroom: 3 – 5th Floor<br>Hon. Beth Labson Freeman |

In its Case Management Order No. 1, this Court directed the publisher plaintiffs to file applications for the appointment of interim lead counsel and a leadership committee by February 25, 2021. *See* ECF 43. The Court's Order does not provide for responses, and appears to contemplate a single submission from each firm (or group of firms). Because other publisher counsel nevertheless filed an opposition to Girard Sharp LLP's application, *see* ECF 51 ("Opp."), Girard Sharp—which represents publisher Mark J. Astarita—respectfully submits this reply in advance of the hearing.

Girard Sharp filed the first complaint in this litigation in May 2020 on behalf of Hanson Law Firm, Grand Atlas Tours, and Surefreight Global LLC d/b/a/ Prana Pets. They sued on behalf of digital advertisers and publishers, alleging Google's overall course of anticompetitive conduct harmed both groups. Months later, in October 2020, the Department of Justice filed a digital advertising monopoly case against Google, and beginning in December 2020—several months after the Hanson Plaintiffs—several state attorneys general and other publishers also filed suit.

The late-filed publishers miss the point when they seek to minimize Girard Sharp's initiation of this case by pointing to academic articles questioning the legality of Google's conduct related to display advertising. Opp. at 9-10. The fact remains that, seven months before any other plaintiff, public or private, Girard Sharp was retained, completed its pre-filing investigation, and filed the first Section 2 complaint. Despite having access to the same sources and a team of more than fifty attorneys (according to their signature block), the late-filed publishers did not file the first of their cases until December 2020. While the order in which counsel filed suit is not dispositive of who is best positioned to represent a class, the record demonstrates that Girard Sharp identified and developed these claims, and committed itself to advancing them, well before the competing firms. More importantly, the other publishers have offered no persuasive reason to conclude the publisher class would not benefit from Girard Sharp's continued involvement in the leadership of this litigation.

Despite their continued assertions of a conflict, "[i]n general, class counsel may represent multiple sets of litigants—whether in the same action or in a related proceeding—so long as the litigants' interests are not inherently opposed." 1 William B. Rubenstein, *Newberg on Class Actions* § 3:75 (5th ed. 2020 supp.). All counsel agree that advertisers and publishers share an important interest in proving Google's violations and its substantial "take rate" due to its exercise of monopoly power.

Opp. at 5-6. Although the other publishers now seek to characterize their claims as "entirely" separate, "fundamentally contradictory" (Opp. at 1), or dependent on minimizing the impact of Google's conduct on advertisers, their complaints allege otherwise. The *Sterling* complaint, for example, includes a section entitled "Google's Scheme increases prices advertisers pay" that describes how Google's stifling of competition on the advertiser side of the market exacerbates the effects of its conduct on the publisher side. *Sterling* Compl. ¶¶ 161-64. Likewise, the *Genius Media* complaint notes that Google's anticompetitive conduct "allows Google to extract more revenue from publishers and advertisers alike." *Genius Media* Compl. ¶¶ 63, 93.

The same plaintiffs now say that "Google's conduct may have actually benefitted advertisers," citing a complaint paragraph that identifies as a common issue in the publisher case "whether Google's conduct has harmed or at least not benefited advertisers." Opp. at 5 (citing *Genius Media* Compl. ¶ 105). Thus, the late-filed publishers' complaints underscore that the advertiser and publisher claims are largely interrelated, not wholly separate or conflicting. This is also why the operative complaint in the *Digital Advertising* action details Google's coercion and self-dealing in relation to publishers. *E.g.*, FAC ¶¶ 137-44. And the amended complaint filed March 15 by the States alleges that Google's "last look" bidding practice, which the other publishers emphasize (Opp. at 5), also "forecloses competition in the ad *buying* tool markets." Amended Compl., ¶ 283, *State of Texas v. Google*, No. 4:20-cv-00957-SDJ (E.D. Tex.), ECF 77 (emphasis added).

Moreover, even if there were a direct conflict (and there is not), because Girard Sharp proposes to serve on a broader leadership team that would include dedicated publisher counsel, there is no concern that the firm's representation of advertisers could, or would, unduly influence the prosecution of publisher claims. *See Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 961 (9th Cir. 2009) (presence of unconflicted class counsel "assuages any additional concerns that a conflict . . . adversely affected the adequacy of representation"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (addition of unconflicted counsel may "cure a conflict of interest even where previous counsel continues to be involved in the case. In fact, the continued involvement of previous counsel can be highly beneficial"). In contrast, courts appoint separate lawyers to represent direct and indirect purchasers in price-fixing litigation because only the direct purchasers dealt directly with defendants

REPLY IN SUPPORT OF APPLICATION OF GIRARD SHARP LLP FOR APPOINTMENT AS INTERIM LEAD COUNSEL
CASE NO. 5:20-cv-08984-BLF

1    and the indirect purchasers' state-law claims require a "pass through" showing that federal law

2    precludes. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968).

3          In this case, where all class members dealt directly with Google and plead Section 2 violations, having Girard Sharp on the leadership team for both advertisers and publishers will yield benefits for the publisher class, the advertiser class, and the litigation as a whole. *See Newberg on Class Actions* § 3:75 (concurrent representation of multiple classes can benefit all class members, including by facilitating global resolution). Increased coordination in pursuing the two sets of claims, including in discovery, is one obvious benefit. Also, while the other publishers propose a "discovery committee," it will be imperative to closely coordinate liability and expert work as well, to efficiently prosecute the claims and minimize the chance of the two groups presenting inconsistent or conflicting arguments or proof, risking harm to the interests of both. Girard Sharp attorneys have ongoing professional relationships with attorneys at the other publisher firms and are prepared to work collaboratively with them for the benefit of all class members.

         That many businesses are both advertisers and publishers—i.e., they operate their own website *and* advertise on other sites—illustrates the problem with the competing publishers' position: these class members have an interest in maximizing their overall recoverable damages, not in prioritizing their publisher claims at the expense of their advertiser claims or vice versa. Common counsel can ensure that companies in both classes are appropriately represented. Some degree of common representation is especially prudent because most plaintiffs' counsel will be representing only publishers or only advertisers, providing the "structural assurance" of fair representation, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997), and the Court will independently ensure that any settlement is fair and adequate. *See, e.g., Mehl v. Canadian Pac. Railway Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005) (no Rule 23 adequacy concern from representation of multiple classes because any settlement will be subject to judicial scrutiny).

         Arguments that an actual conflict may arise, that publishers and advertisers "may contend" different things (ECF 101 at 9:9, 9:11), or an unidentified scholar's unspecified concern are insufficient to deprive the class members of the benefits, such as compatible positions against the common defendant, from coordination now; "courts sensibly hold that speculative conflicts of interest

1  do not preclude a finding that class counsel is adequate." *In re BearingPoint, Inc. Sec. Litig.*, 232
2  F.R.D. 534, 541 (E.D. Va. 2006) (citing, *inter alia*, *Sheftelman v. Jones*, 667 F. Supp. 859, 865 (N.D.
3  Ga. 1987)). Accordingly, "[s]eparate representation is not required until any 'potential conflict matures
4  into an actual material conflict.'" *Sundquist v. Nebraska*, No. 8:14CV220, 2015 WL 6118515, at *2
5  (D. Neb. Oct. 16, 2015) (citation omitted); *see Moore v. PetSmart, Inc.*, 728 F. App'x 671, 674 (9th
6  Cir. 2018) (holding that "there must be some actual, apparent conflict" for separate class counsel to be
7  required); *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (declining to disturb an
8  adequacy of representation finding challenged on the basis of an "uncertain prediction"); *Alberton v.
9  Commonwealth Land Title Ins. Co.*, 264 F.R.D. 203, 208 (E.D. Pa. 2010) (finding no need for separate
10 subclass counsel even though, "if class counsel were to represent both subclasses, they would be put in
11 a position of potentially having to argue that the claims of only one subclass are valid.").

12  Considering the significant benefits to both advertiser and publisher plaintiffs from overlapping representation, there is no reason not to include Girard Sharp—which originated the publisher claims—in the interim leadership for the proposed publisher class. We remain the only firm representing both types of plaintiffs, and although attorneys for the later-filed publishers might benefit by excluding Girard Sharp, the publishers themselves would not, for the reasons discussed above and in our application. We therefore respectfully request that the Court appoint Girard Sharp to the leadership group for the proposed publisher class, subject to revisiting the appointments when the pleadings are settled.

Dated: March 18, 2021

Respectfully submitted,

By:   /s/ *Dena C. Sharp*

Dena C. Sharp (State Bar No. 245869)
Jordan Elias (State Bar No. 228731)
Scott M. Grzenczyk (State Bar No. 279309)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com

scottg@girardsharp.com

John D. Radice (*pro hac vice*)
April Lambert (*pro hac vice*)
**RADICE LAW FIRM, PC**
475 Wall Street
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com
alambert@radicelawfirm.com

Archana Tamoshunas (*pro hac vice*)
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
Fax: (212) 931-0703
atamoshunas@tcllaw.com

*Attorneys for Plaintiffs Mark J. Astarita, Hanson Law Firm, PC, and Surefreight Global LLC d/b/a Prana Pets*

REPLY IN SUPPORT OF APPLICATION OF GIRARD SHARP LLP FOR APPOINTMENT AS INTERIM LEAD COUNSEL
CASE NO. 5:20-cv-08984-BLF